[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings this action for money damages under the Entry and Detainer Statute, Conn. Gen. Stat. 47a-43 et seq., alleging that the defendants locked him out of his rented room and deprived him of access to his belongings. He also alleges that the defendants' actions constitute a theft in violation of Conn. Gen. Stat. 53-564 and an unfair trade practice under the Connecticut Unfair Trade Practice Act ("CUTPA"), Conn. Gen. Stat.42-110a et seq.
The defendant Jimuel Fenderson is the owner of the building at 223 Butler Street in Hamden where the plaintiff rented a room. He appeared through counsel to defend this action. The second defendant is Margaret Greene, who resided in the second floor apartment at 223 Butler Street and assisted Mr. Fenderson by collecting rents. She was defaulted for failure to appear in this action and the trial constituted a hearing in damages as to her.
Beginning in 1986, the plaintiff rented a room on the third floor of 223 Butler Street in Hamden. The rental included the shared use of a kitchen and bathroom. Rent was due on the fifteenth of the month and on or about April 10, 1988, the plaintiff informed Ms. Greene that his April rent would be late because of a wage garnishment. The plaintiff thereafter had two heated conversations with Mr. Fenderson in which Fenderson told the plaintiff to move out. On or about April 28, 1988, the plaintiff tendered the April rent payment to Greene, who refused it, saying Mr. Fenderson had told her not to accept it.
On May 4, 1988, the plaintiff arrived at 223 Butler Street to find that the lock on the rear door, which he used for access to his room, had been changed. A note on the door addressed to the plaintiff from the defendant Fenderson indicated that the CT Page 3405 lock had been changed and the plaintiff should call one of two phone numbers.
The plaintiff then rang the doorbell for Ms. Greene. She came down to the first floor and opened the door to speak with the plaintiff. He asked why the lock had been changed. Ms. Greene told him that the defendant Fenderson had changed the lock and had told her not to allow the plaintiff inside except to pick up his belongings or to use the telephone to call Fenderson. The plaintiff left the property.
Later that evening the plaintiff called the police, who refused to provide any assistance. He then spoke by telephone to the defendant Fenderson, who indicated that the plaintiff would be given access to his room upon payment of two months rent, for April and May. The plaintiff indicated it would take him a few days to obtain the money.
The plaintiff never again lived in his rented room at 223 Butler Street. He unsuccessfully attempted to regain possession by consulting with staff members of the Housing Court and with New Haven Legal Assistance. He called the police a second time and he tried to get information from Mr. Fenderson's attorney, who prepared and signed a notice to quit which was served on the plaintiff on or about May 11. He visited 223 Butler Street almost daily for two to three months to collect his mail and to see what was happening at the property.
The plaintiff did not acquire a permanent place to live until November, 1988, when he moved to a new apartment. In the interim, he spent his nights at the homes or businesses of friends, at his own place of employment, at a social club or on the New Haven Green. The plaintiff claims he was robbed twice during the summer on nights when he slept outside. He further testified that he contracted walking pneumonia during the second month after the lockout.
Mr. Livingston regained possession of his personal belongings from Butler Street in May of 1990. Thereafter, he claimed that possessions worth approximately $6000. were not returned to him. He further claims damages for detention and loss of use of his property, consequential damages resulting from the lockout and damages for emotional harm and distress.
It is undisputed that the defendant Fenderson wrongfully locked out the plaintiff. Mr. Fenderson admitted the same at the outset of the trial. The dispute between the parties centers on the type and extent of damages which the plaintiff should recover. CT Page 3406
The first type of damages sought by the plaintiff is for loss of use of his personal property from May 4, 1988 until he recovered the same in May 1990. (The parties stipulated that the first date established by agreement of the parties for the plaintiff to retrieve his belongings was in March, 1989. However, each party blames the other for the delays from March, 1989 until May 1990, when the plaintiff actually recovered his belongings.)
Although defendant Fenderson openly admits his liability for locking out the plaintiff, he contests an award of damages for loss of use of the plaintiff's personal property, claiming that the plaintiff's personal property was available to him at all times. The defendant's contentions have merit. The plaintiff conceded in his testimony and admitted in his complaint, paragraph 5, that he was told that he would have been permitted into his room to retrieve his belongings on the very day of the lockout. No damages are awarded for loss of use.
The plaintiff next claims damages for personal belongings which were missing when he did finally recover his personal property in May, 1990. The plaintiff claims a loss of approximately $6000., representing the value of twenty-five items not returned to him, including radios, a camera, furnishings, $1000. in bedding, various items of clothing and kitchenware, including two sets of dinnerware and five to six sets of silverware. The plaintiff concedes that he recovered other personal property including clothing, furniture and furnishings, jewelry, electronic items and some kitchenware with a total value over $40,000. He also claims that many of the items which he recovered were in damaged condition.
The defendant Fenderson disputes that the plaintiff failed to recover any of his personal property and that any of the recovered property was damaged. He and Ms. Greene testified that the plaintiff's belongings remained in his room until July, two months after the lockout, when several people packed all of the plaintiff's belongings from his room and placed them in a locked garage at the rear of the Butler Street property. Some of the items were placed on the plaintiff's bed in the garage and covered with sheets. Both defendants testified that although the plaintiff's personal belongings included furniture, radios and a television, much of it consisted of books and old newspapers. Neither of the defendants touched the many boxes which the plaintiff had allegedly stored in the attic crawl space. He later recovered these boxes in May 1990.
The plaintiff of course bears the burden of proving the damages which he has alleged. Expressway Associates II v. Friendly Ice Cream Corp. of Conn., 218 Conn. 474, 476 (1991). The defendant Fenderson has directly challenged the plaintiff's credibility CT Page 3407 with respect to his claim for damages. In 1988 the plaintiff was a 54 year old maintenance worker employed by the State of Connecticut. Wages from his employment totalled approximately $15,000. per year. He lived alone. From 1976 to 1983, he had owned and operated a business known as "Big Money Makers Smart Shoppers Center," a "swap and trade" business dealing in jewelry, household goods and home and garden supplies. He testified that after the business closed and he was preparing to move to the Butler Street room, he gave away more than half the remaining personal property from the business. He fit what remained into his 10 foot by 15 foot bedroom at Butler Street and in 25 to 30 boxes which were stored in an attic storage space off the kitchen.
As evidence of the existence of the many items of personal property about which he testified, the plaintiff offered in evidence a twelve-page handwritten list entitled "Livingston's Property Listings." He testified that he made this list, containing 99 entries, in April, 1988, prior to the lockout. The list contains a stated value for each entry, but no total. The plaintiff testified at trial that in his opinion, the value of the items listed was $100,000. According to a notation on the list, this excludes the 25 to 30 boxes of store merchandise located in the attic.
This list became a focal point during the trial. It formed the basis for several other lists which were submitted also — lists of the allegedly unrecovered property the detained property and a description of the alleged damage to the recovered personal property. The plaintiff testified that he prepared this first list during a three day period while he was in his room at Butler Street in April, 1988. He testified that he made the list "for insurance purposes." Yet he also testified that he never received any estimates for renter's insurance and he had no such insurance because it would be too costly. He also testified that he made the list after his initial dispute with the defendant Fenderson. The plaintiff never explained why, although allegedly deprived of personal property valued at $100,000., he made no effort at all to regain possession of his personal property until months after the lockout.
Mr. Livingston's testimony was contradictory and confused at times. At other times he became highly emotional or evasive. The plaintiff's testimony was not sufficiently credible to sustain his burden of proof with respect to his claim that he failed to recover certain items of his personal property. The court's inability to credit the plaintiff's testimony with respect to the allegedly unrecovered items is also dispositive of plaintiff's claim for treble damages for theft pursuant to Conn. Gen. Stat.52-564. The court does not find that there were any items of CT Page 3408 personal property unrecovered by the plaintiff.
As to the plaintiff's claim that some of the belongings which he recovered were in a damages condition, such damages cannot be awarded in this case because they are not claimed in the plaintiff's amended complaint. The plaintiff cannot recover for a type of damages not set forth in the complaint. Sampiere v. Zaretsky, 26 Conn. App. 490, 492-495 (1992).
The amended complaint in this action was filed in December, 1988, at which time the plaintiff had not yet recovered his personal belongings. The complaint understandably does not allege damage to the belongings later returned because the personal property had not yet been returned. During closing argument at trial, after the evidence was concluded, counsel for the plaintiff made an oral motion to amend the complaint to conform to the proof by adding a claim for the allegedly damaged personal property. Counsel for the defendant asked that the amendment be put in writing and be filed with the plaintiff's post-trial brief, at which time the defendant would either acquiesce or object to the amendment. Plaintiff's counsel agreed but the motion or request to amend was never filed with the court. On the current state of the pleadings, therefore, the court cannot make an award for damages to the personal property.
(The court notes that such an award would be nominal at best. The plaintiff's claims of damage were vague and there was no evidence of the value of the damage claimed.)
The plaintiff also claims damages for a number of consequential losses suffered as a result of the lockout. The first claim is for additional expenses for food from May, 1988 until November, 1988, when the plaintiff moved into a new apartment, a period of twenty-five weeks. The plaintiff testified that as a result of the lockout his food expenses were increased by $100. per week because of the necessity of purchasing meals at restaurants rather than preparing them at home. The defendant contends that these damages, and others claimed by the plaintiff, should not be awarded because they resulted from the plaintiff's failure to find another apartment for himself, his failure to make any effort to mitigate his damages.
Although the defendant spoke frequently throughout the trial of the plaintiff's failure to mitigate damages, beginning with the opening statement at the outset of the trial and continuing frequently thereafter, the defendant failed to plead the failure to mitigate damages as a special defense at any time prior to the close of evidence. It was only after the filing of the plaintiff's post-trial memorandum that the defendant filed a request for leave to amend his answer to plead failure to mitigate as a CT Page 3409 special defense. The request was filed simultaneous with the defendant's post-trial memorandum. The plaintiff timely objected to the proposed amendment and this objection is now sustained by the Court. The defendant was put on notice during trial that the plaintiff was very much aware of the defendant's failure to plead mitigation of damages. Several evidentiary rulings of the Court were based in part on the absence of such a special defense. The proposed amendment was simply filed too late. The Court finds that permitting the post-trial amendment would prejudice the plaintiff and would be an abuse of discretion under these circumstances.
The failure to plead mitigation of damages precludes the Court's consideration of whether the plaintiff here might have mitigated his damages by seeking a new apartment sooner or more diligently. The defendant bears the burden of persuasion on the issue of mitigation of damages. Preston v. Keith, 217 Conn. 12,21-22 (1991). Mitigation of damages raises a question of avoidance. Id. at 16, n. 5. In accordance with Practice Book 164, then, mitigation of damages should be specially pleaded. In the absence of such a special defense, the Court's inquiry is simply whether the plaintiff has satisfied his burden of proving that the claimed damages were proximately caused by the defendant's conduct. The Court finds that the plaintiff has sustained his burden in this regard. The defendant's lockout of the plaintiff was a "substantial factor" in the plaintiff's incurring additional expenses for meals. Coburn v. Lenox Homes, Inc.,186 Conn. 370, 383 (1982). By locking out the plaintiff, the defendant deprived the plaintiff of the kitchen facilities which permitted the plaintiff to prepare his meals more economically. Such damages are awarded in lockout cases. Narvaez v. Villegas, Hartford-New Britain Housing Session, Docket No. 8704-2460, #866. The plaintiff is entitled to $2500. damages for additional food costs.
The plaintiff's next claim for damages is for a total loss of $550. in personal property which he allegedly suffered when he was twice robbed in July 1988 after the lockout. The plaintiff testified that on both occasion, she attended a concert on the New Haven Green and then remained on the Green or nearby. One robbery occurred at 2 or 3 o'clock a.m., the other at 4 or 5 o'clock a.m. On the first occasion, the plaintiff testified that his wallet was taken. On the second occasion, his travel bag containing a camera, glasses, a walkman radio and other items was taken.
In Doe v. Manheimer, 212 Conn. 748 (1989), the Supreme Court used the "scope of the risk" analysis of probable cause to determine whether a property owner was liable for the intervening criminal act of a third party. The Court held that a property CT Page 3410 owner who permitted his property located in a high crime area to become overgrown with bushes and grass was not liable for the sexual assault of a meter reader at the property. That analysis leads to the same result here.
First, this court finds that it is not reasonably foreseeable that a lockout will result in the robbery (twice) of the tenant, who attends a concert on the New Haven Green and then remains in the downtown area. The plaintiff argues that he was homeless, that his homelessness was within the scope of the risk of the lockout, and that the robberies resulted from his homelessness. The Court is not persuaded that this is so. At the time of the lockout in early May the plaintiff was a reasonably healthy, competent, middle-aged man employed on a full-time basis. It is not reasonably, foreseeable that more than two months after the lockout, such a person, not having found substitute or temporary shelter, would spend the night on the New Haven Green, thereby exposing himself to the risk of robbery.
The second factor utilized by the Court in Doe v. Manheimer was whether the defendant had any prior experience which might lead him to believe there would be a connection between a lockout and the subsequent criminal conduct perpetrated on the plaintiff. There was no such evidence here. Based on both these factors, the court finds that the defendant is not liable for the plaintiff's alleged losses from the robberies.
The plaintiff also claims $900. damages for illness and lost sick days. The plaintiff testified that during the second month after the lockout he contracted walking pneumonia and on the advice of a physician, he stopped working for a little more than two weeks. He was paid by his employer for this sick-time, but his number of available sick days was reduced as a result.
The plaintiff's testimony with respect to his illness was entirely uncorroborated. There was no medical testimony nor any medical report establishing that the plaintiff did indeed contract walking pneumonia and if so, that there was a causal connection between the illness and the lockout. The plaintiff has failed to sustain his burden of proof on this claim.
The plaintiff's next claim of damages is for $2000. which he allegedly spent for temporary, substitute items of clothing and furniture because of defendant's detention of his personal belongings. These damages are not awarded by the court. As found by the court earlier in this decision, the plaintiff admits that he was offered access to his belongings on the very day of the lockout. Thereafter, he made no demand for access to or the return of his belongings for months. The plaintiff failed to establish the necessary causal connection between the lockout and CT Page 3411 his alleged purchase of $2000. in temporary, substitute possessions.
The plaintiff also seeks judgment for $607. for a security deposit for his new apartment and $104. for the rental of a truck to remove his belongings from the garage and attic at the Butler Street property. The plaintiff presented documentary evidence corroborating his testimony that he, rented a truck on May 19, 1990 to remove his belongings from Butler Street. The court awards $104. to the plaintiff. The court will not award damages for payment of the security deposit, however. A security deposit is not an unrecoverable payment. At the end of his tenancy at his new apartment, the plaintiff should recover his security deposit if he complies with all his obligations as a tenant.
The plaintiff's final claim for compensatory damages is for damages from the emotional distress of the lockout. The plaintiff testified at length about the emotional stress which he suffered as a result of being locked out of his rented room. Although the plaintiff was prone to exaggeration in describing his emotional state which resulted from the lockout, there is no question that he suffered some shock, anxiety and mental anguish as a result of the lockout. Damages for emotional distress resulting from an entry and detainer have been awarded by the Housing Session. Viera v. Wirth, 12 CLT No. 45 (Nov. 17, 1986), New Haven Housing Session, #363. The Court awards the plaintiff $1000. for emotional distress suffered as a result of the lockout. Damages for emotional distress are difficult to calculate but the Court finds that sum to be appropriate compensation for the plaintiff's emotional suffering.
The total compensatory damages awarded to the plaintiff is $3604. The plaintiff also seeks an award of double damages pursuant to Conn. Gen. Stat. 47a-46. After trial, the parties briefed and argued the applicability of Freeman v. Alamo Management Co., 24 Conn. App. 124 (1991), certification granted218 Conn. 201 (1991) to the facts of this case. In Freeman, the Appellate Court held that double damages may be awarded under Conn. Gen. Stat. 47a-46 only if the plaintiff has proven the violation of Conn. Gen. Stat. 47a-43 (a) by clear and convincing evidence. Id. at 131.
It is not necessary to address the parties' claims with respect to Freeman because the Supreme Court has just reversed the Appellate Court decision. Freeman v. Alamo Management Co.,221 Conn. 674 (1992). The Supreme Court held that entitlement to double damages under Conn. Gen. Stat. 47a-46 may be established by only a preponderance of the evidence.
There is no question that the plaintiff here has established CT Page 3412 the violation of Conn. Gen. Stat. 47a-43. The defendant has admitted the lockout. The court finds that an award of double damages is appropriate. The total damages awarded on the First Count is $7208.
In the Third Count of the complaint, the plaintiff also seeks punitive damages and an award of attorneys' fees under CUTPA. The plaintiff contends that the defendant's admitted lockout constitutes a CUTPA violation.
"Trade" and "Commerce" as defined under CUTPA include the rental or leasing of real property. Conn. Gen. Stat. 42-110a(4). The defendant's violation of the plaintiff's right of possession and his right to be dispossessed only pursuant to summary process constitute a violation of public policy, as a result of which the plaintiff has suffered an "ascertainable loss." Conn. Gen. Stat. 42-110g(a). CUTPA violations are frequently found where liability is established in entry and detainer actions, Viera et al. v. Wirth et al., supra; John Hay Benevolent Association v. William Gelinas, 16 CLT (Jan. 8, 1990). The Connecticut Supreme Court has held that a CUTPA violation "certainly" can be found based on a violation of Conn. Gen. Stat.47a-43 (a); Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243
(1988). The court finds that the defendant has violated CUTPA.
An award of punitive damages for a CUTPA violation is discretionary with the Court. Conn. Gen. Stat. 42-110g(a). Such an award must be based on "a reckless indifference to the rights of others or an intentional and wanton violation of those rights." Gargano v. Henry, 23 Conn. 616, 622 (1987). Although this standard is satisfied by the facts of this case, the court declines to make an award of punitive damages which would be in addition to the double damages awarded under Conn. Gen. Stat.47a-46. In its recent decision in Freeman v. Alamo Management Co., at 221 Conn. 674, the Supreme Court refers repeatedly to the double damage award under Conn. Gen. Stat. 47a-46 as an award of "punitive damages." This court finds that the additional $3604. of double damages awarded under the Entry and Detainer statute serves the same purpose of deterrence and punishment which would be achieved by an award of punitive damages under CUTPA. The court, in the exercise of its discretion, therefore will not award punitive damages under CUTPA in addition to double damages already awarded.
The plaintiff is also entitled to an award of attorneys' fees under CUTPA. Conn. Gen. Stat. 42-110g(d). With respect to the amount to be awarded, Conn. Gen. Stat. 42-110g(d) provides that the court may award reasonable attorneys' fees "based on the work reasonably performed by an attorney and not on the amount of CT Page 3413 recovery." The Appellate Court has indicated that Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974) sets forth the factors to be considered by the trial court to determine the amount of attorneys' fees to be awarded under CUTPA. Hernandez v. Monterey Village Associates Limited Partnership,24 Conn. App. 517, n. 1 (1991). At the outset of trial, the parties agreed with the court's suggestion that the matter of attorneys' fees be deferred pending a ruling on the merits of the case. The clerk will schedule a further hearing limited to the issue of the amount of attorneys' fees to be awarded.
Judgment is entered against both defendants for $7208. compensatory damages plus costs. A supplemental judgment for attorneys' fees will be entered after further hearing.
VERTEFEUILLE, JUDGE